UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAN JUAN EXCURSIONS, INC., a Washington Corporation; ROGER J. HOFF and JANE DOE HOFF, and their marital community; and ALEX M. RALSTON, individually,<br><br>Defendants. | No. C05-2017Z<br><br>ORDER |

This matter comes before the Court on Defendant Ralston's Motion for Partial Summary Judgment Re: Choice of Law and Coverage Limit Under Part E of Policy, docket no. 40, and Plaintiff's Cross Motion for Summary Judgment on Applicable Law, docket no. 52. Having considered the parties' briefs, declarations, and exhibits thereto, and the oral argument of counsel on September 11, 2006, the Court enters the following Order.

## BACKGROUND

Plaintiff Insurance Company of North America ("INA"), a Pennsylvania corporation, is seeking a declaratory judgment on maritime insurance coverage against Defendants San Juan Excursions, Inc. ("San Juan"), Roger and Jane Hoff and their marital community, and Alex Ralston. Compl., docket no. 1, at ¶ 1. Defendant San Juan is a Washington

ORDER -1-

Corporation that operates a whale watching business using the M/V ODYSSEY.  Compl. at 2, ¶¶ 2, 5; San Juan's Answer and Countercls., docket no. 10, at 1-2, ¶¶ 2, 5; Def. Ralston's Answer and Affirmative Defenses, docket no. 6, at 2,  ¶¶ 2, 5.  Roger Hoff is the president of San Juan, and the Hoff's have an ownership interest in the M/V ODYSSEY.  Compl. at 1–2, ¶ 2; San Juan's Answer and Countercls. at 2,  ¶ 2; Def. Ralston's Answer and Affirmative Defenses at 2, ¶ 2.  Defendant Ralston is a former employee of San Juan's who was severely injured while working on the vessel.  Compl. at 4, ¶ 13; San Juan's Answer and Countercls. at 3, ¶ 13; Ralston's Answer and Affirmative Defenses at 3, ¶ 13.

INA insured the M/V ODYSSEY.  Kraft Aff., docket no. 41, Ex. 1 (Policy at 11, Part B).  The Policy included liability coverage as well as statutorily-required coverage for benefit claims under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950.  Id. (Policy at 13, Part E).  The Policy also included a "Lay-up Warranty," which is defined in the Policy as "[a] series of consecutive months during the policy period when your vessel is laid up and out of commission.  During this time your vessel must be laid up in a safe berth ashore or afloat, and not navigated or used for living aboard."  Id. (Policy at 16).  The "Declarations Page" of the Policy states:  "Layup [sic] Warranty: It is warranted that the insured vessel(s) be laid-up from 01/01 to 04/14 Afloat." Id. (Policy at 5).  The "Declarations Page" also provides that "[t]he insured vessel will be principally moored or berthed at: Friday Harbor." Id.   In defining "warranty," the Policy states: "Warranty means an agreement in the policy or provided by the law that must be strictly and literally complied with: A breach of warranty voids the insurance contract during the term of such a breach."  Id. (Policy at 9).

San Juan and INA agree that on or about March 10, 2004, San Juan sailed the M/V ODYSSEY from its berth at Friday Harbor, Washington, to Port Angeles, Washington for repairs.  Compl. at 3, ¶ 8; San Juan's Answer and Countercls. at 3, ¶ 8.  On or around March 28, the M/V ODYSSEY was being repaired by Newday Boat Repair in Port Angeles,

Washington; on that same date, Mr. Ralston was working aboard the vessel and sustained significant injuries when he fell from the starboard side of the vessel.

After Mr. Ralston was injured, he filed an LHWCA claim against San Juan and INA to recover benefits under the Act. OWCP NO. 13-141942, OALJ NO. 2005-LHC-00637; Compl. at 2, ¶ 3; San Juan's Answer and Countercls. at 2, ¶ 3; Ralston's Answer and Affirmative Defenses at 3, ¶ 3. Mr. Ralston also filed a personal injury claim against San Juan in Tacoma District Court.[1] See Ralston v. San Juan Excursions, Inc., No. 05-5308, 2006 WL 328404 (W.D. Wash. Feb. 9, 2006). That claim has been dismissed in its entirety, id., but Mr. Ralston has appealed the decision. Def. Ralston's Reply to Pl.'s Resp. to Mot. Partial Summ. J., docket no. 55, at 8.

INA brought this action seeking a judgment declaring the rights and obligations of the parties under the policy. Specifically, INA seeks a declaration that there is no duty to defend and/or indemnify San Juan for any claim arising from Mr. Ralston's injuries due to San Juan's alleged violation of the lay-up warranty in the policy. Compl. at 5, ¶ 15. San Juan denies violating the warranty and seeks a declaration (1) that INA has a duty to defend and idemnify San Juan for all claims arising from Mr. Ralston's injuries, (2) that the amount of coverage applicable to Mr. Ralston's claim under Part E of the Policy is all statutory damages that can be recovered by Ralston against San Juan, and (3) that INA is estopped from denying coverage or limiting its liability. San Juan's Answer and Countercls. at 4, ¶ 1; id. at 7, ¶ 3. San Juan also counterclaims against INA on the basis that INA has (1) breached its duty of good faith, (2) violated Washington's Consumer Protection Act, RCW 19.86, *et. seq.*, and (3) forced San Juan to incur expenses to obtain the full benefit under the Policy, entitling them to recover under the Olympic Steamship doctrine. Id. at 6, ¶¶ 12–14. Mr. Ralston seeks a declaratory judgment that is consistent with the judgment requested by San

---

[1] Section 905(b) of the LHWCA authorizes employees to sue the owner of the vessel for negligence. 33 U.S.C. § 905(b).

ORDER  -3-

Juan.  See Ralston's Answer and Affirmative Defenses at 4, ¶ 1–3.

This Court recently granted permissive intervention to the Director, Office of Workers' Compensation Programs, United States Department of Labor ("Director").  See Order, docket no. 57.  The Director subsequently moved for partial dismissal due to lack of subject matter jurisdiction, requesting that the Court dismiss the portion of this action relating to INA's liability for Mr. Ralston's LHWCA benefits claim.  Mot. Partial Dismissal, docket no. 36.  Because the OALJ has exclusive administrative jurisdiction to determine whether INA is liable for Mr. Ralston's LHWCA benefits, the Court granted the Director's motion.  See Order, docket no. 64.  The Court retained jurisdiction, however, over the issue of whether INA has a duty to defend and/or indemnify San Juan with respect to other types of coverage.

Mr. Ralston's motion for partial summary judgment asks the Court to apply Washington law in determining whether San Juan violated the Policy's lay-up warranty and what the effect of such a violation is if it occurred.  Additionally, Mr. Ralston asks the Court to hold that his 905(b) negligence claim against the vessel is not subject to the $1,000,000 limit for liability coverage applicable to Part B of the policy.  INA's cross-motion for partial summary judgment asks the Court to apply federal admiralty law and to hold that the rule of strict compliance with express warranties governs the warranty dispute, and, if the negligence claim is not moot, that an express liability limit of $1,000,000 applies to that claim.  San Juan did not respond to either motion.

///

///

///

///

///

ORDER   -4-

# DISCUSSION

## I.     Legal Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Neither of the parties' summary judgment motions present any disputed issues of material fact; both motions relate solely to questions of law.

## II.    Choice of Law Analysis

Mr. Ralston argues that Washington law governs the warranty dispute because (1) the parties contracted to apply Washington law, and (2) Washington law applies under federal choice-of-law analysis.  INA argues that the rule of strict compliance with express warranties governs the dispute because (1) the parties contracted to apply the rule of strict compliance, and (2) the rule of strict compliance applies under a federal-choice-of law analysis.

### A.     Express Warranties in Marine Insurance and the Strict Compliance Rule

"Warranties in marine insurance are conditions whereby the assured undertakes that some particular thing shall or shall not be done, or that some condition shall be fulfilled, or whereby he affirms or negatives the existence of a particular state of facts."  Thomas J. Schoenbaum, Warranties in the Law of Marine Insurance: Some Suggestions for Reform of English and American Law, 23 Tul. Mar. L.J. 267, 268-69 (1999) ("Shoenbaum, Warranties").  The strict compliance rule for marine insurance warranties holds that warranties must be strictly performed—no motive or necessity will excuse a breach.  Id. at 281–82.  The status of this rule in American admiralty law is uncertain.

### B.     The Policy Does Not Contain a Choice-of-Law Designation

"In general, if an insurance policy contains a choice-of-law provision requiring that the law of a specified jurisdiction be used in construing the policy, that provision will be

ORDER  -5-

followed unless overriding public policy considerations suggest a contrary rule should be applied." 15 Eric M. Holmes, Holmes' Appelman on Insurance § 112.2 (2d ed. 2000); see also New England Mut. Life Ins. Co. v. Gray, 786 F.2d 406, 411 (6th Cir. 1986). Mr. Ralston's argument that the parties contracted to apply Washington law to the warranty dispute assumes that the Policy's conformity-to-state-law provision operates as a choice-of-law provision. The Policy provides:

> CONFORMITY TO STATE LAW: When a provision of this policy is in conflict with the applicable law of the state in which this policy is issued, then the law of the state shall apply.

Policy at 15. Mr. Ralston argues that Washington law conflicts with the "warranty" provision of the Policy, which requires strict compliance with warranties, and therefore Washington law must apply to the warranty dispute.[2] INA argues that the standard of strict compliance does *not* conflict with Washington law.

Mr. Ralston argues that the "warranty" provision of the Policy conflicts with Washington law because it provides that a warranty agreement must be strictly and literally complied with and voids the policy without any reference to whether the warranty was made with the intent to deceive or whether the breach of the warranty was material to the loss. Def. Ralston's Mot. Partial Summ. J., docket no. 40, at 6; see Policy at 9. The Washington State Supreme Court has "frequently held [that] the imposition of an unjust or unreasonable penalty or forfeiture out of all proportion to the consequences of a breach [of contract] will not be enforced," and "has not hesitated to grant relief from express conditions in contracts, where great injustice and undue hardship would result from strict enforcement of the terms of the agreement." Hegeberg v. New England Fish Co., 7 Wn.2d 509, 521, 523 (1941).

Federal courts have consistently interpreted Washington's law to require that a breach of an express warranty must be related to a loss in order to void coverage. Highlands Ins.

---

[2] No one disputes that the Policy was issued in Washington.

ORDER -6-

Co. v. Koetje, 651 F. Supp. 346, 347 (W.D. Wash. 1987) (Dimmick, J.) (under Washington law, "an insurance contract will be voided only if the breach contributed to the loss sustained or increased the risk of loss of the type sustained . . . . Washington law would not void coverage unless the breach related to the loss sustained . . . ."); Kennedy v. Sphere Drake Ins. P.L.C. No. 4 A/C, 2002 WL 505903 (9th Cir. 2002) (unpublished opinion); Transit Casualty Co. v. Pederson Fisheries, Inc., No. 83-147R (W.D. Wash. 1985) (unpublished opinion); Rondy's Inc. And Wilburn Hall v. Insurance Company of North America, 1988 A.M.C. 2234 (D. Or. 1986) (applying Washington law holding a breach of an express warranty does not void policy where the breach has no relationship to the cause of the loss).  Thus, the "warranty" provision of the INA policy at issue in this case conflicts with Washington law because it voids coverage for a loss regardless of whether the breach of warranty is related to the loss.[3]

This conflict, however, is irrelevant unless Washington law applies under a federal choice-of-law analysis.  Mr. Ralston's assumption that the Policy's conformity-to-state-law provision operates as a choice-of-law provision is mistaken.  See DeCesare v. Lincoln Benefit Life Co., 852 A.2d 474 (R.I. 2004) ("Conformity-with-state-law provisions . . . do not operate as choice-of-law provisions.") (citing Sonoco Bldgs., Inc. v. Am. Home Assurance Co., 877 F.2d 1350, 1352 (7th Cir. 1989)); see also Holmes, supra, § 112.2 (noting that courts have rejected arguments that contract provisions not explicitly addressing choice-of-law issues, such as conformity-to-state-statute provisions, should be treated as choice-of-law provisions).

The plain language of the Policy's conformity-to-state-law provision indicates that it is not intended to apply as a choice-of-law provision.  It provides only that state law will

---

[3] Mr. Ralston also argues that the policy conflicts with RCW 48.18.090(1), which requires that misrepresentations or warranties be made with intent to deceive in order to void coverage.  RCW 48.18.090(1).  The Court does not reach this issue because the "warranty" provision of the Policy conflicts with Washington law.

ORDER  -7-

apply where "the *applicable* law of the state in which the Policy was issued" conflicts with a provision in the Policy. Policy at 15. Thus, if, under federal choice-of-law rules, federal admiralty law applies to the dispute, rather than state law, the conformity-to-state-law provision is irrelevant because Washington law is not applicable. If, however, federal choice-of-law rules require that Washington law apply, then the agreed-upon standard of strict compliance will not govern the warranty dispute because strict compliance conflicts with applicable Washington law.

C.  Federal Choice-of-Law Analysis: Wilburn Boat

"[W]hether federal or local law applies to a maritime insurance contract can present a troublesome question." Kalmbach, Inc. v. Ins. Co. of the State of Pennsylvania, 529 F.2d 552, 554 (1976). In Wilburn Boat Company v. Fireman's Fund Insurance Company, 348 U.S. 310, 313–14 (1955), the Supreme Court considered whether state law or federal admiralty law governs the effect of a breach of express warranty in a marine insurance contract. In answering this question, the Court applied a two-part test: "(1) Is there a judicially established federal admiralty rule governing these warranties? (2) If not, should we fashion one?" Id. at 314. The Court concluded that there was no established admiralty rule requiring strict fulfillment of marine insurance warranties: "Whatever the origin of the 'literal performance' rule may be, we think it plain that it has not been judicially established as part of the body of federal admiralty law in this country." Wilburn Boat, 348 U.S. at 316. The Court then declined to fashion such a rule, noting:

> The whole judicial and legislative history of insurance regulation in the United States warns us against the judicial creation of admiralty rules to govern marine policy terms and warranties. The control of all types of insurance companies and contracts has been primarily a state function since the States came into being.

Id. at 316, 320.

Six years later, in Kossick v. United Fruit, 365 U.S. 731, 742 (1961), the Court held

ORDER   -8-

that federal admiralty law, rather than state law, governed the validity of a shipowner's alleged oral agreement with his seaman regarding medical care. Id. at 732, 741–42. The Court distinguished Wilburn Boat, reasoning that "[t]he application of state law in that case was justified by the Court on the basis of a lack of any provision of maritime law governing the matter there presented." Id. at 742. The Court also noted that the concurring opinion in Wilburn Boat as well as some commentators had attributed the decision to "the absurdity of applying maritime law to a contract of insurance on a houseboat established in the waters of a small artificial lake between Texas and Oklahoma." Id. The contract in Kossick, the Court concluded, "presented a more genuinely salty flavor than that." Id.

In Bohemia, Incorporated v. Home Insurance Company, 725 F.2d 506, 510 (9th Cir. 1984), the Ninth Circuit Court of Appeals concluded that Wilburn Boat and Kossick, when read together, "hold that state law will control the interpretation of a marine insurance policy only in the absence of a federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice." More recently, however, this rule has been restated as follows: "Disputes arising under marine insurance contracts are governed by state law . . . unless an established federal rule addresses the issues raised, or there is a need for uniformity in admiralty practice." Yu v. Albany Ins. Co., 281 F.3d 803, 806 (9th Cir. 2002). Thus, in the absence of an established federal admiralty rule or a need for uniformity in admiralty practice, Washington law will be applicable to the warranty dispute in this case. See id. INA asserts that there is an established federal admiralty rule of strict compliance with express warranties. Mr. Ralston disagrees.

> *1.   Strict compliance with All Express Warranties in Marine Insurance Policies is Not an Established Federal Admiralty Rule.*

Ninth Circuit case law provides little guidance as to how "established" a federal rule

ORDER  -9-

must be to govern a marine insurance dispute. See, Yu, 281 F.3d at 809 & n.5.[4] Among courts that have undertaken the Wilburn Boat analysis, criteria for determining whether a judicially established federal admiralty rule exists vary widely.[5] However, one criterion that consistently appears throughout Ninth Circuit case law is the requirement that there be substantial agreement among authorities that have considered the rule.

In Bohemia, for example, the Court relied upon St. Paul Fire & Marine Insurance Company v. Vest Transportation Company, 500 F. Supp. 1365 (N.D. Miss. 1980), in concluding that a federal admiralty rule was "sufficiently establishe[d]" to govern the interpretation of certain insurance provisions. Bohemia, 725 F.2d at 509. In Vest, the Court had undertaken an "exhaustive review of the federal case law," Bohemia, 725 F.2d at 509, and found "settled case law" and "unanimous . . . consensus of the federal cases" to support its application of the rule. Vest, 500 F. Supp. at 1374–75. Similarly, in Port Lynch, this court concluded that strict interpretation of navigational and trading warranties was a

---

[4] Some courts avoid the choice of law dilemma by determining that federal admiralty and state law on an issue coincide. See, e.g., id. at 808–10; see also Reliance Ins. Co. v. McGrath, 671 F. Supp. 669, 677, 678 (N.D. Cal. 1987). Other courts assume, without analysis, that state law applies to marine insurance disputes. See, e.g., Certain Underwriters at Lloyd's v. Montford, 52 F.3d 219, 223 (9th Cir. 1995); Suydam v. Reed Stenhouse of Washington, Inc., 820 F.2d 1506, 1508 (9th Cir. 1987). Finally, if the parties agree on the applicable law, courts may avoid the Wilburn Boat analysis by citing such agreement. See, e.g., Campbell v. Hartford Fire Ins. Co., 533 F.2d 496, 496 (9th Cir. 1976); Ahmed v. American Steamship Owners Mut. Prot. and Indem. Ass'n, Inc., 444 F. Supp. 569, 571 (N.D. Cal. 1978).

[5] See Joel K. Goldstein, The Life and Times of *Wilburn* Boat: A Critical Guide (Part II), 28 J. Mar. L. & Com. 555, 575–76 (1997):
> At times, a single citation to an appellate court decision has been sufficient to support a finding that "entrenched" law exists. Some cases suggest that the "federal courts"–presumably any federal court–can establish a governing admiralty rule. Others have allowed a few appellate decisions to establish a relevant admiralty rule, a showing less than what the Court found insufficient in Wilburn. Indeed, some have relied on the same breach of warranty cases Wilburn found insufficient to find a federal rule regarding the effect of a breach of warranty. But others have found no "judicially established federal admiralty rule" even after citing two cases and two texts to support a proposition. Some believe a federal rule, to be pertinent, must be one which the Supreme Court has generated.

Id. (footnotes omitted).

ORDER   -10-

"solidly entrenched" judicially fashioned admiralty rule because the rule had "been adopted and applied by almost every federal court which has considered the scope and effect of navigational and trading limits in marine insurance policies." 754 F. Supp. 816, 824 (W.D. Wa. 1991). Port Lynch also held that the doctrine of *uberrimae fidei*[6] was an established federal admiralty rule "[i]n light of the near universal adoption of this rule by federal courts . . . ." Id. at 822. In contrast, the Court in Lein Ho Hsing Steel Enterprise Company, Limited v. Weihtag, 738 F.2d 1455 (9th Cir. 1984), concluded that the generally accepted custom for marine underwriters to act as agents of the insured had *not* "risen to the stature of a judicially established federal admiralty rule." Id. at 1458. Key to the Court's reasoning was that, although two secondary sources and two cases supported the existence of an agency rule, two other cases suggested that there was no such rule. See id.

INA asserts that, since Wilburn Boat, the rule of strict compliance with marine insurance warranties has *become* an established federal admiralty rule. However, there is disagreement among authorities as to whether strict compliance with marine warranties is an established federal admiralty rule.[7] INA's reliance on Campbell v. Hartford Fire Ins. Co., 533 F.2d 496 (9th Cir. 1996), for the proposition that the Ninth Circuit has held that marine

---

[6] Pursuant to this doctrine, a marine insurance policy is void *ab initio* if an insured makes misrepresentations material to the marine risk or fails to disclose material increases in the marine risk. Id. at 820-21.

[7] **Compare** New Hampshire Ins. Co. v. Dagnone, 394 F. Supp. 2d 480, 485–86 (D.R.I. 2005) (no judicially established federal admiralty rule requiring strict compliance with marine insurance warranties), *and* Commercial Union Ins. Co. v. Pesante, 359 F. Supp. 2d 81, 82–83 (D.R.I. 2005) (same); *and* Holmes, supra, § 112.1C ("[T]he rule that marine insurance warranties must be strictly and literally performed has not been judicially established as part of federal admiralty law . . . ."), *and* Suydam, 820 F.2d at 1508 (applying state law to determine the consequences of a breach of express warranty in marine insurance policy), *and* Koetje, 651 F. Supp. at 347 & n.2 (same), *and* Rondys, 1988 A.M.C. at 2240 (same), **with** Lexington Ins. Co. v. Cooke's Seafood, 835 F.2d 1364, 1366 (11th Cir. 1988) ("Lexington II") ("[A]dmiralty law requires the strict construction of express warranties in marine insurance contracts . . . ."), *and* Albany Ins. Co. v. Jones, 1997 A.M.C. 1407, 1996 WL 904756, *4 (D. Alaska 1996) (citing Lexington II for same), *and* Hilton Oil Transport v. T.E. Jonas, 75 F.3d 627, 630 (11th Cir. 1996) (same), *and* Aetna Ins. Co. v. Dudney, 595 So.2d 238, 239 (Fla. Dist. Ct. App. 1992) (same).

ORDER   -11-

warranties require strict compliance is misplaced.  In Campbell, the parties *stipulated* that English law governed the warranty dispute.  Id. at 497.  Contrary to INA's asssertion, the Campbell court went no further than to describe and apply the stipulated English law.[8]

Port Lynch's approach of limiting Wilburn Boat's holding to the specific types of warranties at issue in Wilburn Boat[9] is supported by Kossick: "[t]he application of state law in [Wilburn Boat] was justified by the Court on the basis of a lack of any provision of maritime law governing *the matter there presented*."  Kossick, 364 U.S. at 742 (emphasis added).  Other courts have also followed this approach.[10]  Thus, the appropriate inquiry in the present case is whether there is an established federal admiralty rule requiring strict compliance with *lay-up warranties*, or whether the need for uniformity in admiralty practice mandates the creation of such a rule.

> 2. *Strict compliance with Lay-Up Warranties is Not an Established Federal Admiralty Rule.*

Neither party addressed the issue of whether strict compliance with *lay-up warranties* is an established federal admiralty rule.  A review of the case law, however, makes clear that it is not.  Very few courts have addressed whether lay-up warranties, specifically, require strict compliance under federal admiralty law, and none of these courts have concluded that an established federal admiralty rule on the issue exists.

In Axa Global Risks (UK), Limited v. Webb, 2000 A.M.C. 2679, 2000 WL

---

[8] To the extent that the court's citation to 2 Chorley, Arnold on the Law of Marine Insurance and Average § 635 (13th ed. 1950) may imply otherwise, see Campbell at 497, the citation was inapposite to the construction of maritime insurance warranties under American law because the treatise was published prior to Wilburn Boat.

[9] Wilburn Boat involved a warranty that the boat would not be sold, transferred, assigned, or pledged without written consent of the insurers and a warranty that the boat would be used solely for private pleasure purposes.  348 U.S. at 313 n.1.

[10] See, e.g., Florida Marine Towing, Inc. v. United Nat'l Ins. Co., 686 So.2d 711, 712-13 (Fla. Dist. Ct. App. 1997) ("The Wilburn Boat decision did not involve a breach of navigational warranty.").

ORDER  -12-

33179617, *2 (M.D. Fla. 2000), the defendant's vessel sank while it was docked in the water during a period of time the defendant had warranted the vessel would be laid up on shore. Although the court stated that "[i]t is well-established under federal maritime law that breach of an express warranty in a marine insurance contract voids the contract," the court did not identify an established federal admiralty rule requiring *strict compliance* with lay-up warranties. See id. Instead, the Court reasoned that even under Florida's law, which provided that a breach of warranty must contribute to a loss or increase the hazard insured against in order to void coverage, the defendant could not recover for the loss. Id. The Axa Global Risks court concluded that the breach of warranty and misrepresentation did "increase the hazard" insured against. Similarly, in New Hampshire Insurance Company v. Dagnone, 394 F. Supp. 2d 480, 485 (D.R.I. 2005), the court held that there was no settled federal admiralty rule establishing that breach of a lay-up warranty negates coverage even if the breach is immaterial to the loss.[11]  (Court applied New York law requiring strict compliance).

Moreover, other cases in which courts have addressed the consequences of a breach of lay-up warranty arguably support the proposition that a loss *should* be related to the breach in order for coverage to be voided. For example, in Goodman v. Fireman's Fund Insurance Company, 600 F.2d 1040, 1042–43 (4th Cir. 1979), the plaintiff's yacht sank as a consequence of his failure to properly lay up the yacht during the winter months as mandated by the policy's lay-up warranty. In holding that the plaintiff's loss was not covered by the policy, the court noted: "It is a familiar rule that the breach of an express warranty in a contract for marine insurance releases the insurer from any liability *due to the breach*."  Id. at 1043, citing Capital Coastal Corp. v. Hartford Fire Ins. Co., 378 F. Supp. 163, 172 (E.D.

---

[11] Although the courts in Campbell and Gelb v. Automobile Insurance Company of Hartford, 168 F.2d 774 (2d Cir. 1948), stated that the rule of strict compliance applied to the lay-up warranties at issue in those cases, the court in Campbell was applying English law, to which the parties had stipulated, 533 F. Supp. at 497, and the court in Gelb was describing New York law, 168 F.2d at 776.

Va. 1974). The Capital Coastal Corp. court, without discussion of whether it applied federal maritime law as state law, held that a breach of a warranty (warranty that vessel shall be operated by particular master) released the insurer. In Jefferson Insurance Company of New York v. Huggins, 2000 A.M.C. 2357, 2000 WL 1881201, *1 (N.D. Texas), the plaintiff's boat was destroyed due to an engine fire that occurred while the boat was being operated off the coast of Florida in violation of the policy's lay-up warranty, which prohibited the boat from being in the water during the lay-up period. Citing Goodman for the proposition that a breach of express warranty in marine insurance releases the insurer from liability *due to the breach*, the court held that the plaintiff was not entitled to recover for the loss. Id. at *2–3, 2000 A.M.C. at 2358.

There is no agreement among courts that a breach of a lay-up warranty will void coverage regardless of whether the loss was related to the breach. Thus, there is no established federal admiralty rule requiring strict compliance with lay-up warranties.

> 3. *INA Has Not Demonstrated that there is a Compelling Need for Uniformity in Admiralty Practice Requiring this Court to Fashion a New Federal Admiralty Rule.*

In determining whether to fashion a new admiralty rule, courts focus on whether applying state law would have a significantly deleterious effect on uniformity in maritime law. See, e.g., Port Lynch, 754 F. Supp. at 825 ("[T]o allow for different standards of coverage where trading limit warranties have been breached according to where a vessel sank, or where the insurance policy providing coverage was issued . . . would have a severely deleterious effect on uniformity in maritime law." (quoting Lexington I); see also Kiernan v. Zurich, Co., 150 F.3d 1120, 1122 (9th Cir. 1998) (declining to fashion a federal admiralty rule because the competing state statute "[did] not conflict with any feature of substantive admiralty law, nor with any remedy peculiar to admiralty jurisdiction."). Courts also consider whether the context of the dispute is "uniquely maritime." See Kiernan, 150 F.3d at 1122–23 (distinguishing a Sixth Circuit case in which "the uniquely maritime context of the

ORDER  -14-

controversy . . . required the application of a federal admiralty rule," and reasoning that "[t]hat case truly concerned shipping in its national and international aspects," whereas the case at bar did not) (internal quotations omitted)).

The judicial creation of marine insurance rules is strongly disfavored, however. In Kiernan, the Ninth Circuit Court emphasized that:

> Both the Supreme Court and this court disfavor the judicial creation of marine insurance rules: It has been authoritatively recognized that, just as Congress has abstained from regulating insurance, so should the federal courts.  The Supreme Court has declared: 'We, like Congress, leave the regulation of marine insurance where it has been–with the states.'  The Supreme Court has noted that the requirement of a uniform federal maritime law 'still leaves the states a wide scope.'

Id. (citation and some internal quotations omitted).  Thus, courts should decline to create admiralty rules governing maritime insurance disputes in the absence of a compelling need for uniformity in admiralty practice.  See id. at 1123 ("Because of the admonitions against judicial creation of federal maritime law to govern maritime insurance policies and the absence of any compelling need in this case for a uniform admiralty rule, we decline to fashion [such] a rule . . . .").

INA fails to even suggest that applying Washington law to the warranty issue in this case would have a deleterious effect on uniformity in admiralty practice.  INA appears to argue that lay-up warranties require a uniform admiralty rule because lay-up warranties are analogous to navigational warranties, and limits on navigation in marine insurance policies have long been held by admiralty courts to require a uniform rule of law.  See Pl.'s Resp. at 10–11.

While there may be a compelling need for a uniform law of strict compliance with navigational warranties, INA has failed to demonstrate any such need for a uniform law of strict compliance with lay-up warranties.  In Yu, the court compared captain warranties to navigational warranties and concluded that there are "sound policy reasons" for strictly

ORDER   -15-

enforcing these types of warranties. 281 F.3d at 810. The court reasoned as follows:

> Like warranties concerning navigation, the captain's warranty permits the insurer to control the amount of risk it assumes, and the insured thereby to secure a reasonable premium. To inject a requirement of loss causation would lead to uncertainty in determining the obligations of the parties, and would make coverage depend on highly hypothetical determinations of causation . . . . For example, if some error of [the] Captain . . . caused the vessel to sink, would [the insurance company], in order to avoid coverage, have to show that [the] authorized captains . . . would not have made the same mistake?

Id. at 810, n.8.

Thus, given the "admonitions against judicial creation of federal maritime law to govern maritime insurance policies and the absence of any compelling need in this case for a uniform admiralty rule," Kiernan, 150 F.3d at 1123, the Court declines to fashion a federal admiralty rule requiring strict compliance with lay-up warranties in marine insurance policies.

Having determined (1) that no established federal admiralty rule requires strict compliance with lay-up warranties, and (2) that INA has not demonstrated any compelling need for uniformity in admiralty practice requiring this Court to fashion such a rule, the Court holds that Washington law applies to the alleged breach of the lay-up warranty in this case. Thus, the lay-up warranty will be given effect only if the breach contributed to the loss sustained or increased the risk of loss of the type sustained. See Highland Ins. Co. v. Koetje, 651 F. Supp. at 347. The Court further concludes that there are issues of fact which preclude a ruling as to whether the "breach contributed to the loss sustained or increased the risk of loss of the type sustained." Highlands Ins. Co., 651 F. Supp. at 346.

**III. Whether Mr. Ralston's Negligence Claim is Subject to the $1,000,000 Liability Limit under Part B of the Policy is Moot**

Mr. Ralston's 905(b) negligence claim against San Juan was dismissed in its entirety by Judge Burgess. See Ralston v. San Juan Excursions, Inc., No. 05-5308, 2006 WL 328404 (W.D. Wash. Feb. 9, 2006). Notwithstanding Mr. Ralston's appeal, the issue is currently

ORDER  -16-

moot. Therefore, the Court declines to provide an advisory opinion on the issue of what policy limit applies to Mr. Ralston's negligence claim. See *PUC v.* FERC, 100 F.3d 1451, 1459 (9th Cir. 1996) ("A federal court cannot issue a declaratory judgment if a claim has become moot.").

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendant Ralston's Motion for Partial Summary Judgment Re: Choice of Law and Coverage Limit Under Part E of Policy, docket no. 40. The Court GRANTS the motion insofar as the Court holds that Washington law governs the warranty dispute in this case. The Court DENIES WITHOUT PREJUDICE the motion as to whether, under Washington law, the breach of the lay-up warranty contributed to the loss sustained or increased the risk of loss of the type sustained. The Court also DENIES AS MOOT the issue of whether the $1 million policy limit applies to Mr. Ralston's negligence claim. The Court DENIES Plaintiff's Cross Motion for Summary Judgment on Applicable Law, docket no. 52.

IT IS SO ORDERED.

DATED this 12th day of September, 2006.

Thomas S. Zilly
United States District Judge

ORDER   -17-